IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BLACKBIRD TECH LLC d/b/a
BLACKBIRD TECHNOLOGIES,

    Plaintiff,

v.

NIANTIC, INC.,

    Defendant.

C.A. No. 17-cv-1810-RGA

MEMORANDUM ORDER

Presently before the Court is Defendant's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), on the basis that the asserted patent claims are invalid under 35 U.S.C. § 101. (D.I. 15). I have reviewed the parties' briefing. (D.I. 16, 18, 19).

I. **BACKGROUND**

On December 15, 2017, Plaintiff brought this action against Defendant alleging infringement of U.S. Patent No. 9,802,127 ("the '127 patent"). (D.I. 1). On March 3, 2018, Defendant filed a motion to dismiss Plaintiff's original complaint on the basis that the asserted patent claims are invalid under 35 U.S.C. § 101. (D.I. 9). However, the motion was terminated as moot when Plaintiff filed its first amended complaint. (D.I. 13, 14). On April 6, 2018, Defendant filed the present motion to dismiss the first amended complaint. (D.I. 15).

Claim 1 of the '127 patent recites:

1. A computer-implemented method comprising:

    receiving a first position indicator representing a first current physical location for a user of a video game, wherein said first position indicator is determined at least

in part by taking a global navigation satellite system reading of said first current physical location;

obtaining image data relating to said first current physical location, said image data comprising two or more camera images of said first current physical location;

mapping said image data into a virtual environment of said video game by displaying said image data as a video, wherein said user experiences within said virtual environment real life objects from said first current physical location, and said user simultaneously encounters within said virtual environment virtual objects that are not physically present in said first current physical location;

receiving a second position indicator representing a second current physical location for said user as said user navigates a geographic area surrounding said first current physical location;

saving at least said second position indicator to a memory; and

storing at least said second position indicator in said memory when said video game is not executing.

'127 patent, claim 1.[1]

## II. LEGAL STANDARD

Section 101 of the Patent Act defines patent-eligible subject matter. It provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. The Supreme Court has recognized an implicit exception for three categories of subject matter not eligible for patentability—laws of nature, natural phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). The purpose of these carve outs is to protect the "basic tools of scientific and technological work." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012). "[A] process is not unpatentable simply because it contains a

---

[1] The parties have not stated whether claim 1 is representative, but the briefing almost exclusively addresses claim 1. (D.I. 16 at 3–4, 17–20; D.I. 18 at 2). Therefore, I treat claim 1 as representative.

law of nature or a mathematical algorithm," as "an application of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection." *Id.* at 1293–94 (internal quotation marks and emphasis omitted). In order "to transform an unpatentable law of nature into a patent-eligible application of such a law, one must do more than simply state the law of nature while adding the words 'apply it.'" *Id.* at 1294 (emphasis omitted).

In *Alice*, the Supreme Court reaffirmed the framework laid out in *Mayo* "for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." 134 S. Ct. at 2355. First, a court must determine whether the claims are drawn to a patent-ineligible concept. *Id.* If the answer is yes, the court must look to "the elements of the claim both individually and as an 'ordered combination'" to see if there is an "'inventive concept'—*i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* "A claim that recites an abstract idea must include 'additional features' to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Id.* at 2357. Further, "the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment." *Id.* at 2358 (quoting *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010)). Thus, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* For this second step, the machine-or-transformation test can be a "useful clue," although it is not determinative. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014).

3

"Whether a claim is drawn to patent-eligible subject matter under § 101 is an issue of law," and "is a matter of both claim construction and statutory construction." *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008), *aff'd sub nom. Bilski v. Kappos*, 561 U.S. 593 (2010). "Claim construction is a question of law." *In re Nuijten*, 500 F.3d 1346, 1352 (Fed. Cir. 2007).

The Federal Circuit has held that a district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and "all the claims are substantially similar and linked to the same abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (quotation marks omitted).

## III. ANALYSIS

Defendant argues that the '127 patent claims are directed to the abstract idea of "receiving, processing, and displaying or storing location information." (D.I. 16 at 5). Defendant analogizes the asserted claims to the method claim in *Concaten, Inc. v. Ameritrack Fleet Solutions, LLC*, which was found invalid under § 101. 131 F. Supp. 3d 1166 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir. 2016). The *Concaten* claim provided steps for relaying weather and road data to and from snowplows, comprising: (1) "receiving" information on a snowplow's physical location, and the weather and road conditions in that area; (2) "processing" the information to provide a map and determine an instruction for the snowplow operator; and (3) "providing" the map and instruction to the operator. The claim further required that the map be "visually displayed, by a touch screen monitor," and that specific conditions be included in the instruction. *Id.* at 1169–70. The *Concaten* court found the claim directed to the abstract concept of "receiving, processing, and transmitting data." *Id.* at 1174. The court rejected the argument that the claim was directed to the tangible concept of optimizing snowplows for real-

4

time conditions, because it did not cover "any previously-unknown method of optimization." Therefore, the court found the alleged optimization was "nothing more than taking steps routinely performed by humans . . . and applying them on a computer through unexplained 'processing' of data." *Id.* at 1174–75.

Defendant argues that the '127 patent claims are likewise directed to an abstract concept because they "merely describe the idea of receiving, processing, and displaying location information in the context of a video game virtual environment using generic computer components." (D.I. 16 at 8). I think Defendant oversimplifies the claims. Under the *Alice* framework, courts must be wary of "describing the claims at such a high level of abstraction and untethered from the language of the claims" lest "the exceptions to § 101 swallow the rule." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); *see also Diamond v. Diehr*, 450 U.S. 175, 189 n.12 (1981); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016).

I find the *Concaten* claim distinguishable from the '127 patent claims. Defendant forces the analogy by essentially reading out the '127 patent's "mapping" limitation. The mapping limitation requires taking camera images of a real physical space, where the user is located, and integrating those images as a video into a virtual video game environment. '127 patent, claim 1. This ensures that the claimed method does not merely take "steps routinely performed by humans" and apply them on a computer—mapping as described in the claims could not be performed by humans. Further, unlike the abstract optimization step done by "unexplained 'processing' of data" in *Concaten*, the mapping step here is tethered to specific instructions on which images are to be mapped (camera images from the user's physical location), where those images are to be mapped (the video game virtual environment), and how those images are to be

5

displayed (as a video wherein the user experiences both real and virtual objects within the video game virtual environment). '127 patent, claim 1. Defendant argues that this is an insufficient level of detail as the claims fail to explain how the "image data is displayed as a video" and how the "images are allegedly combined." (D.I. 19 at 7–8). To the extent that Defendant disputes whether a person of ordinary skill in the art would know how to display or combine the images as claimed, Defendant makes an enablement argument beyond the scope of § 101. Therefore, I find Defendant applies an inappropriate level of abstraction such that its description of the claims is "untethered from the language of the claims." *See Enfish*, 822 F.3d at 1337.

Defendant also argues, "The 'wherein' clause in the 'mapping' limitation merely describes an outcome and thus is the exact type of aspirational and 'result-focused' claim courts have routinely rejected as abstract for lack of specificity." (D.I. 19 at 7–8). Of the cases that Defendant cites, *Apple, Inc. v. Ameranth, Inc.* offers the strongest support for this "result-focused" argument. 842 F.3d 1229 (Fed. Cir. 2016).[2] The claims at issue in *Ameranth* described a system comprising several standard computing components, "a first menu consisting of menu categories," "a modifier menu," "a sub-modifier menu," and "application software" for generating and transmitting a second menu. A "wherein" clause described various features to be facilitated by the application software relating to the generation of a second menu. *Id.* at 1234. The Federal Circuit found the claims directed to an abstract idea because "[t]hey do not claim a

---

[2] Defendant also cites to *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), and *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015). In *Electric Power*, the court noted that "the essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." 830 F.3d at 1356. This was done under *Alice* step two, however, which is a separate analysis from whether claims are directed to ineligible subject matter under *Alice* step one. In *Internet Patents*, the court found the claims directed to an abstract idea in part because they described "the effect or result dissociated from any method by which [the result] is accomplished." 790 F.3d at 1348. Notably, the missing method was also identified as "the essential innovation" in the patent. *See id.* at 1344–45.

6

particular way of programming or designing the software to create menus that have [particular] features, but instead merely claim the resulting systems. Essentially, the claims are directed to certain functionality—here, the ability to generate menus with certain features." *Id.* at 1241.

I think the claims at issue in *Ameranth* are distinguishable from those asserted here. Although claim 1 of the '127 patent does use a "wherein" clause to describe some limitations relating to the mapping feature, it also provides specific instructions on how the mapping is done. In contrast, the claims in *Ameranth* do not provide any instruction on how the application software would facilitate the required menu features—the method is purely "result-focused."

In contrast, I find *McRO* instructive. The claims in *McRO* related to a method for automatically animating speech in three-dimensional characters. The Federal Circuit found the claims were not directed to an abstract idea because they were "focused on a specific asserted improvement in computer animation" whereby "[t]he claimed process uses a combined order of specific rules that renders information into a specific format." *Id.* at 1314–15. The Federal Circuit has since described the *McRO* claims as being "directed to the creation of something physical—namely, the display of 'lip synchronization and facial expressions' of animated characters on screens for viewing by human eyes. The claimed improvement was to how the physical display operated (to produce better quality images [by providing more life-like animations])." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (citations omitted).

I find the '127 patent claims, like the claims in *McRO*, are directed to "a specific means or method that improves the relevant technology." *McRO*, 837 F.3d at 1314. The claimed technology allegedly solves the problem in the existing art of being confined to a "predetermined and merely virtual location" in a video game by "incorporating a user's physical location as part

of the game environment." (D.I. 13 ¶ 15 (quotation marks omitted)). This is done by the specific means of first taking camera images of the user's physical location, and then mapping those images as a video into the virtual game environment. '127 patent, claim 1. The asserted claims, like in *McRO*, are "directed to the creation of something physical"—the display of camera images depicting the user's location overlaid with the virtual images from the video game "for viewing by human eyes." *See InvestPic*, 898 F.3d at 1167. The claimed improvement is to "how the physical display operated," that is, to "produce better quality images" by simultaneously displaying real and virtual objects, creating a more interactive video game environment.

Because I find that the '127 patent claims are not directed to ineligible subject matter under *Alice* step one, I do not reach *Alice* step two. *Enfish*, 822 F.3d at 1339.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.I. 15) is **DENIED**.

IT IS SO ORDERED this 31 day of October 2018.

Richard G Andrews
United States District Judge